## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| vs. | : CRIMINAL No. 3:23-cr-064 (JAM) |
| JUSTIN McKENNEY | : November 23, 2023 |

### DEFENDANT'S SENTENCING MEMORANDUM

Justin McKenney is 29 years old and will live the remainder of his life as a sex offender. He will serve a lengthy prison term, and that term will be spent looking over his should as he bears the mark not only of sex offender but also having violated the innocence and sanctity of childhood, rendering him the lowest of the low in the prison environment.  After his prison term, he will reenter a seemingly unforeseeable world where advances in technology used in supervision likely will serve to isolate him in an increasingly connected world, climate change likely will have left communities ravaged by extreme weather, and AI will increasingly render portions of the population unemployable.

Living in these decades to follow, Mr. McKenney will be continuously punished for the harm he caused the victims in his case.  His incarceration will continue for years, and his status as a sex offender, particularly of children, likely will make that incarceration even more punitive than years in prison already would be.  Upon Mr. McKenney's release, he will live under conditions of supervised release so restrictive that sex offenders released into the community often observe that life in prison was comparatively easier.  He expects a lengthy term of supervised release, which, combined with his prison term, will keep him in the criminal justice system for decades.

These consequences flow from the seriousness of the offense conduct.  Mr. McKenney harmed multiple victims.  He encouraged the creation of child pornography that was provided to

him.  He had physical contact with two victims.  This conduct warrants a significant prison term, and the 10-year mandatory minimum prison term ensures that outcome as part of the prison sentence.

There are, however, facts that weigh in favor of a sentence at the lower end of the Court's broad discretion.  Mr. McKenney has no prior significant record or time in prison.  Mr. McKenney has significant family ties and support.  Mr. McKenney has carpentry and other construction-related skills that make him employable and self-sustaining.  Mr. McKenney's risk of recidivism is reduced not only by the deterrence of having been prosecuted and imprisoned for a significant term, but also by supervision to ensure that he is compliant with treatment directives, including with medication prescriptions and online limitations.  There is a statutory minimum of 10 years, and a total Guidelines range that offers scant, punishment-oriented advice. The directive for punishment is clear, but the need for a lengthy term is offset by considerations indicating that protecting the public and reducing the risk of recidivism could be addressed by approaches other than incapacitation.

Cases involving child victims typically are overwhelming.  The victims are devastated; the offense conduct is among the most outlying behavior that exists in American society; and the statutory consequences are unyielding, requiring a lengthy prison term.  The defendants' lives are irreversibly altered, and they face a long prison life where they are likely to be deemed by both corrections officers and even fellow inmates as the worst of the worst.  The terms of supervision that follow are lengthy and include conditions that emphasize restriction and reducing risk.

This case holds all those considerations, and more, but the end approaches, with 18 U.S.C. § 3553(a) moving toward its center.  The parsimony clause provides the overarching

guidance – directing the Court to impose a sentence that is sufficient but not greater than necessary.  As discussed below, when all of the circumstances and purposes of sentencing are considered, a 13-year prison term and a lengthy term of supervised release should suffice.

## I.     THE BASIC SENTENCING FRAMEWORK

Title 18, United States Code § 3553(a) provides a litany of factors for the Court to consider in making its determination of a reasonable sentence, of which the following are the most pertinent here:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed –

    A.    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    B.    to afford adequate deterrence to criminal conduct;

    C.    to protect the public from further crimes of the defendant; and

    D.    to provide the defendant with needed education or vocation training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentence and sentencing range established for –

    A.    the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines

    B.    .        .        .        .

(5)    any pertinent policy statement –

    A.    issued by the Sentencing Commission . . .

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; . . .

Under § 3553(a)'s "parsimony clause," the overarching principle is that the sentencing court's duty is to "impose a sentence sufficient, but not greater than necessary to comply with the specific purposes set forth" at 18 U.S.C. § 3553(a)(2). *United States v. Dorvee*, 604 F.3d 84, 93 (2d Cir. May 11, 2010) (citation omitted).

The Guideline range is but one factor and not the most important one.  The primacy given to the Guidelines in the sentencing process, including the PSR, is outdated, and inconsistent with its role as advice and its placement in 18 U.S.C. § 3553(a), and should be rejected.  The statutory framework of 10 to life in prison frames the range with which the Court must comply, and in the PSR, the Guidelines set a range of 360 to life.  When all of the factors and purposes set forth in § 3553(a) are considered, the Court's discretion encompasses a sentence that marshals all of the purposes of sentencing, not just the uniform punishment that the Guidelines promote  While consideration of all of the purposes warrant more than the statutory minimum term of 10 years, those purposes can be satisfied by a term of 13 years, as discussed below.

II.     **SEVERAL FACTS IMPACT THE APPLICATION OF THE 3553(a) FACTORS IN DETERMINING A SUFFICIENT SENTENCE.**

A.      **"[T]he nature and circumstances of the offense" Are Significant, as Evident From the Mandatory Minimum Prison Term.**

The first sentencing factor, 18 U.S.C. § 3553(a)(1), can be broken into several components of significance here, starting with "the nature and circumstances of the offense." Mr. McKenney pled guilty to one count each of enticement of a minor to engage in illegal sexual activity and one count of receipt of child pornography.  The Court must impose a term of at least ten years of imprisonment, with a minimum of five years of supervised release to follow.  The total statutory maximum term is life for the enticement count, but 20 years for the receipt count. Arduous conditions of supervised release are likely, see PSR, ¶¶ 189-208, with the potential for

significant additional prison time if Mr. McKenney were to violate any conditions in, at the earliest, the 2030s, including the possibility of a minimum five-year prison term if Mr. McKenney committed certain statutory violations.[1]  See Plea Agreement, ECF No. 60, at 2.

All enticement and receipt cases are serious offenses, made more so here by the number of victims and that Mr. McKenney has contact with one of his victims.  See PSR, ¶¶ 6-32.  From a child pornography perspective, common aggravators are missing here.  There is not the large collection of child pornography downloaded from internet websites or other sources.  There is no sign of distribution or any contact with other adults involved in child pornography; nor are there signs of Dark Web activity.  The months-long span of time for the offense conduct is somewhat lesser by comparison to defendants whose activities of collecting, distributing, and even producing pornography can spend lengthy periods of time.  There is no evidence of activity involving children related to Mr. McKenney or having some other relationship, such as caretaker, coach, or teacher.  None of the victims are under 10 years old, and one victim involves conduct that may not be prosecutable in State Court.[2]

Regardless of the weighing of the details, the offense conduct clearly warrants a significant consequence, which the statutory consequences provide.  Ten years in prison is a significant term, especially considering that the term will be a more punitive experience due to

---

[1] Arrested March 17, 2022, even with the minimum term of 10 years, and assuming that he is fully credited with 54 days of good conduct time per year, Mr. McKenney's projected release date likely will be in the latter half of 2030, at the earliest.

[2] Victim No. 4 was seventeen years old during the offense conduct.  See PSR, ¶¶ 31-32. Connecticut's general age of consent is sixteen years old, and "child pornography" is defined as pornographic images of someone under the age of sixteen. See Conn. Gen. Stat. §§ 53a-73a, 53a-193(13). Connecticut, under its legitimate legislative authority, has made the determination that a person above the age of sixteen can engage in sexual activity, including making images of that activity, without state involvement. *See State v. Sawyer*, 335 Conn. 29, 39 (Conn. 2020) (recognizing that person involved must be under age of sixteen) (quoting Conn. Gen. Stat. § 53a-193(13)).

Mr. McKenney's sex offender status, particularly given that that status involves children.  His access to programs, participation in employment, and general day-to-day life is going to be different than for the average prisoner.  Indeed, given the offense conduct, Mr. McKenney can expect to be a target within the prison system.  In these circumstances, punishment is a necessary consequence that will be felt daily, even beyond his release, and the statutes ensure that purpose is front and center by raising the floor of the Court's discretion.

**B.   "[T]he history and characteristics of the defendant" Also Impact The Calculation Significantly.**

The second component of the first sentencing factor, 18 U.S.C. § 3553(a)(1), requires that the Court take a close examination of a defendant, apart from the offense conduct at issue.  In so doing, the Court can assess whether and to what extent a defendant's make-up impacted his engagement in the offense, as well as the prospects for rehabilitation and risk of recidivism.  Mr. McKenney's childhood and early adulthood, particularly as analyzed by Dr. Baranoski, weigh heavily in the analysis.

**1.   Mr. McKenney's childhood was marred by instability and inadequate support, leading to a young adulthood in which his mental health needs were unmet.**

As a child, Mr. McKenney lived in poverty, suffered eight years of abuse at the hands of his stepfather, received inconsistent treatment for mental health needs, and relocated repeatedly. See Report of Psychological Evaluation, Madelon Baranoski, Nov. 3, 2023 (the "Report"), ECF No. 80, Background Summary, Early Childhood.  Plagued by depression and anxiety, he first attempted suicide at age 12.  *See id.*, Adolescent Development.  More suicide attempts followed, but familial support for treatment was erratic and short.  *See id.*  His mother eventually married and established a more stable home, but Mr. McKenney already was engaged in drug use and seeking support from peers, including older ones who engaged in criminal activity.  *See id.*

6

When he should have been deepening his family bonds in preparation for adulthood, he spent more than a year in a residential, juvenile program, interrupted by hospitalizations in connection with two additional suicide attempts.  *See id.*

  **2.**  **Mr. McKenney developed employable skills as a carpenter and in masonry.**

  Absent during his childhood, Mr. McKenney's father returned as Mr. McKenney approached adulthood.  *See* Report, Background Summary, Adult Development.  His father had struggled with addiction. *See id.*  The two bonded over Mr. McKenney learning carpentry skills that enabled him to join a union and hold fairly consistently employment until his arrest.  *See id.*

  **3.**  **Other than in the area of employment, Mr. McKenney's instability and immaturity from childhood continued, leading to a downward spiral and the offense conduct.**

  As an adult, Mr. McKenney coped with his anxiety, depression, and other mental health needs with work, marijuana, and a series of dysfunctional relationships.  *See id.*  Mr. McKenney had a son, but the relationship did not last.  *See* Report, Background Summary, Adult Development.  Mr. McKenney spent time with his son but relied on his mother to care for him during parenting time.  *See id.*  He married hastily, separated, but delayed getting divorced.  *See id.*  Mr. McKenney entered another relationship, cohabitating quickly, only to have his girlfriend end the relationship, telling him that she had had a miscarriage.  *See id.*

  Mr. McKenney drifted into familiar territory – depression.  *See* Report, Background Summary, Adult Development.  He had long used marijuana on a daily basis, but he increased his use, including as a sleep aid, and he added cocaine and increased his alcohol intake.  *See id.*  Mr. McKenney cut out contact with his son's mother and, to some extent, his son, and he skipped working.  *See id.*  Mr. McKenney began to use the internet consistently, connecting with victims via social media.  *See id.*

C.       **The Goals And Purposes Of Sentencing Require Balancing All Factors.**

As detailed below, a sentence of thirteen years and a lengthy term of supervised release

will be "sufficient, but not greater than necessary," to serve the § 3553(a) purposes of providing

just punishment for Mr. McKenney's offense, providing adequate specific and general

deterrence, protecting the public, and facilitating Mr. McKenney's rehabilitation.

> 1.       **A sentence of 13 years will provide adequate punishment for Mr.
>          McKenney's offense.**

Section 3553(a)(2)(A) requires the Court to consider "the need for the sentence imposed .

. . to reflect the seriousness of the offense, to promote respect for the law, and to provide just

punishment for the offense."  The punitive effect of any sentence is not viewed in a vacuum by

reference to an offense alone; rather, that effect is, and must be, measured against Mr. McKenney.

Prior to this offense, Mr. McKenney had never served a day in prison.  He has now served more

than a year-and-a-half, and he has years and years remaining.  Such a period of time is objectively

punitive, and is also subjectively punitive insofar as Mr. McKenney has never been previously

punished.  Several additional considerations indicate that 13 years will significantly punish Mr.

McKenney.

The punitive effect also comes from the harshness of the conditions of

confinement.  *See United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020)

(acknowledging the "seriousness and duration of [the individual's] criminal conduct," but noting

"the environment where [the individual] is serving his sentence" changes things).  Mr.

McKenney is a target for retribution within the prison system.  His offense conduct is viewed as

the lowest of the low, and for some inmates effected by sexual abuse committed against them or

loved ones, Mr. McKenney can be a target for revenge.

Mr. McKenney also will be punished by the collateral consequences of his conviction.
Felony convictions carry extremely serious collateral consequences. *See United States v. Stewart*,
590 F.3d 93, 141 (2d Cir. 2009) ("It is difficult to see how a court can properly calibrate a 'just
punishment' if it does not consider the collateral effects of a particular sentence.").  "[M]yriad
laws, rules, and regulations operate to discriminate against ex-offenders and effectively prevent
their reintegration into the mainstream society and economy. These restrictions amount to a form
of 'civil death' and send the unequivocal message that 'they' are no longer part of 'us.'" *United
States v. Nesbeth*, 188 F.Supp.3d 179, 194 (2016) (noting over 50,000 federal and state statutes
and regulations that impose penalties, disabilities, or disadvantages on convicted felons.").
These consequences arguably are more severe here, where there is the additional, salient burden
of being on the sex offender registry, which causes social harm, deepens stigma, and reduces
employment opportunities, along with creating a risk of additional prison time if his registration
is not properly maintained.  Any period of supervised release also will include burdensome
conditions, serving both to promote rehabilitation but also significantly reducing Mr.
McKenney's liberty.

> **2.    A thirteen-year sentence, along with a lengthy period of supervised release, will serve additional sentencing purposes.**

There is no need for the Court to impose a sentence longer than thirteen years to deter Mr.
McKenney from committing future crimes.  Mr. McKenney is aware that repeating this conduct
in the United States will lead to even longer, mandatory minimum prison terms.  Previously, he
had no expectation of the enormity of the consequences that confront him.  Accordingly, the
criminal prosecution, conviction, period of incarceration, and term of supervised release in this
case are sufficient to teach that lesson to him as well as potential offenders.

As for general deterrence, "the available evidence points toward a null or a slightly criminogenic effect of imprisonment but has rarely found support for a clear specific deterrent effect."[3]  It is both the fact of the defendant's punishment and not a particular magnitude that matters.  Each additional year beyond 13 that Mr. McKenney spends incarcerated is not likely to provide any appreciable marginal increase in general deterrence.  There is certainly no empirical evidence to suggest a period of imprisonment longer than 13 years is a necessary deterrent.

By contrast, a longer period of imprisonment is not only unnecessary to achieve the goals of punishment and protecting society, but could actually be counterproductive insofar as long periods of incarceration have been shown to increase the criminogenic effects of imprisonment which include contact with more serious offenders and weakening of family ties.[4]  As a 2012 review of the studies that have examined the deterrent effect of sentence severity concludes, "the vast majority of these comprehensive summaries found no convincing evidence suggesting that harsher sentences deter."[5]  Recognizing that "effective deterrence arises from certainty, not harshness, of punishment," a decision in the Eastern District of New York poses whether "our society might better consider whether our scarce resources would be better spent, not on extended incarceration, but on eliminating social conditions encouraging crime and on non-incarcceratory techniques." *United States v. Bannister*, 786 F. Supp. 2d 617, 668 (E.D.N.Y. 2011) (Weinstein, J.). This case obviously involves incarceration, and presents with a different offense, but the broader

---

[3] Ellen Raaijmakers *et al.*, *Exploring the Relationship Between Subjectively Experienced Severity of Imprisonment and Recidivism: A Neglected Element in Testing Deterrence Theory*, 54 J. RES. CRIME & DELINQUENCY 1, 4 (2017).

[4] Francis T. Cullen *et al.*, *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 PRISON J. SUPPLEMENT 485 (2011); U.S. Sent'g Comm'n, Staff Discussion Paper, Sentencing Options under the Guidelines at 18–19 (Nov. 1996).

[5] Cheryl Marie Webster et al., *Searching for Sasquatch: Deterrence of Crime Through Sentence Severity*, in THE OXFORD HANDBOOK ON SENTENCING AND CORRECTIONS 173–195, 176 (2012).

point about spending society's resources on incapacitating Mr. McKenney for decades when his ability to commit a comparable crime in the future already is reduced still weighs in favor of a less lengthy prison term.

Further with respect to deterrence, perhaps more significant than the length of the sentence is that Mr. McKenney will age significantly. Mr. McKenney currently is 29 years old. He will spend at least a decade in prison. In December, 2017, the U.S. Sentencing Commission released a report on the effects of aging on recidivism among federal offenders.[6] Relying on statistical analyses tracking 25,321 U.S. citizen federal offenders released in 2005 for eight years post-release, the Sentencing Commission found that recidivism rates are strongly correlated with age. Confirming the results of previous studies, the Sentencing Commission concluded that "[o]lder offenders were substantially less likely than younger offenders to recidivate following release."[7] Older offenders were less likely to recidivate "regardless of the length of sentence imposed," and "among all offenders sentenced to one year or more of imprisonment, there was no clear association between the length of sentence and the rearrest rate."[8] Furthermore, "older offenders who do recidivate do so later in the follow-up period, do so less frequently, and had less serious recidivism offenses on average."[9]

The Sentencing Commission report also found that "[e]ducation level influenced recidivism across almost all categories."[10] As Mr. McKenney has graduated high school and has

---

[6] U.S. Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* (December 2017), available at https://www.ussc.gov/sites/default/files/pdf/research-andpublications/
research-publications/2017/20171207_Recidivism-Age.pdf.
[7] *Id.* at 3.
[8] *Id.*
[9] *Id.* at 30.
[10] *Id.* at 3.

further training, he is at an even lower risk of recidivism than the average offender his age.  Also important, Mr. McKenney has held gainful employment for a significant period of time, has support from his family, and knows that he needs treatment.  Those factors all point towards a reduced risk of recidivism.

> **3.     A sentence of 13 years, along with a term of supervised release, will better facilitate Mr. McKenney's rehabilitation.**

Section 3553(a)(2)(D) requires the Court to consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  This purpose militates strongly in favor of a 13-year sentence.  Congress has explicitly directed that "imprisonment is not an appropriate means of promoting correction and rehabilitation."  18 U.S.C. § 3582(a).  Case in point -- to date, Mr. McKenney's opportunity to engage in pro-social programming has been extremely limited.  Looking forward, there will be no meaningful rehabilitative benefit from any additional time in the BOP beyond the 13-year prison term.

Moreover, a sentence of longer than 13 years will unnecessarily delay access to treatment. Mr. McKenney should receive sex offender treatment during his time in BOP. "Inmates ordinarily participate in the [two relevant] programs during the remaining 36-48 months of their sentence."[11]  Consequently, treatment for Mr. McKenney likely is several years in the offing.  There is no reason to further postpone treatment any longer than it will already be delayed.  This would be antithetical to rehabilitation in violation of 18 U.S.C. § 3553(a)(2)(D)

---

[11] *See* Bureau of Prisons, "*Sex Offenders*," available at https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp ("Offenders typically participate in sex offender treatment in the final three years of their incarceration").

and, almost standing alone, would make a sentence of greater than 13 years "greater than

necessary" to accomplish the purposes of sentencing.

**D.      The Advice Provided By The Sentencing Guidelines Largely Is Just Emphasizing Punishment.**

Prepared for the Court's use in sentencing Mr. McKenney, the PSR typically receives

significant weight in determining a sentence.  There is no disputing that the offense conduct is

serious, or that Mr. McKenney has no prior criminal record.  See PSR, ¶ 90.  While *Crosby*

requires that the Court calculate the Guidelines, the PSR's emphasis on the Guidelines by setting

forth the offense level calculations and criminal history calculations before reviewing Mr.

McKenney's history and characteristics is contrary to cabining the role of the Guidelines as

advice and the structure of 18 U.S.C. § 3553(a).

**1.      The offense level calculations include flawed advice.**

The Court of Appeals has recognized that the Sentencing Commission's approach to

child pornography is "fundamentally different" from its guidance with respect to most other

offense and consequently, "unless applied with great care, can lead to unreasonable sentences

that are inconsistent with what § 3553 requires." *United States v. Dorvee*, 616 F.3d 174, 184 (2d

Cir. 2010). Specifically, the *Dorvee* court explained, "Sentencing Guidelines are typically

developed by the Sentencing Commission using an empirical approach based on data about past

sentencing practices.  While *Dorvee* concerned possession of child pornography and Mr.

McKenney's case concerns enhancements under § 2G2.1 and §2G1.3, a Dorvee-type analysis is

still appropriate

> [M]uch of the <u>*Dorvee*</u> court's criticism of the child pornography guidelines
> applies to the guidelines for production offenses as well. As with the
> guidelines for trafficking in child pornography found in Section 2G2.2, the
> Sentencing Commission did not use an empirical approach to develop the
> production guidelines found in Section 2G2.1. Instead, the Commission

13

>has increased the base offense level and added enhancements for
>production offenses "usually as a result of congressional directives."

*United States v. Brown*, 843 F.3d 74, 89 (2d Cir. 2016) (Pooler, J., dissenting).

Those concerns are seen in the Guidelines calculation in Mr. McKenney's case, where some of the enhancements are unreasonably duplicative. For example, in the production calculations, the base level offense of 32 necessarily accounts, to some degree, for the fact that the victim is a minor – the statute concerns *child* pornography. There is no empirical basis for adding more levels, especially four or two as opposed to any other number [12]

In essence, § 2G2.1 exhibits the same redundancy that the *Dorvee* Court highlighted with regard to the § 2G2.2 guidelines. To read *Dorvee* as only applying to § 2G2.2 and possession cases ignore *Dorvee*'s broader rationale that the Guidelines are unreasonable where the basis for the calculations rests on other than empirical data. Redundant enhancements are no more sustainable simply because the conduct involves production.

---

[12] Courts have recognized that even the previous increases of the base offense level from 10 to 18 were not the result of any research or empirical evidence, but the result of the Sentencing Commission's attempt "to square the guidelines with Congress's various directives." *Dorvee*, 604 F.3d at 96; *see also United States v. Phinney*, 599 F. Supp. 2d 1037, 1042-1043 (E.D. Wisc. 2009); *Stern*, 590 F. Supp. 2d at 960 (noting that "the most recent changes to the Guidelines apparently came from two lawyers in the Justice Department who persuaded a novice Congressman to add them to the popular Amber Alert bill" (quotations and brackets omitted)).
    The use-of-a-computer enhancement has received specific attention as being the product of a failed process.

>The Commission has often openly opposed these Congressionally directed changes. For instance, the Commission criticized the two level computer enhancement (which is currently set forth at § 2G2.2(b)(6) and was adopted pursuant to statutory direction) on the ground that it fails to distinguish serious commercial distributors of online pornography from more run-of-the-mill users. Speaking broadly, the Commission has also noted that "specific directives to the Commission to amend the guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress."

*Dorvee*, 604 F. 3d at 95-96 (citations omitted).

14

The use of a computer enhancement also is without significant basis.  See PSR, ¶¶ 50, 58, 65, 72.  The Guidelines offer unreliable advice rooted in a time when child pornography was made and distributed differently, and when production was far more involved than just taking a smartphone out of one's pocket.  The involvement of computers no longer credibly qualifies as a *bona fide* aggravating fact in today's world, where nearly everyone walks around with a computer capable of making and editing videos in their possession, and the ability to connect with people throughout the world. *See United States v. Dorvee*, 616 F.3d 174, 186 (2d Cir. 2010).  The use of the Snapchat application to communicate with any victims likewise does not warrant application of this outdated enhancement.  At an event earlier this year, Snapchat reported having over 750 million active monthly users and approximately 375 million daily users.[13]  Social media is now more prevalent than landline phones in America at the time of the writing of this Guideline enhancement.

The addition of five offense levels for a pattern of conduct is duplicative of the impact of the multiple count adjustment and the use of the highest offense level, which scored in only one of the four calculations.  See PSR, ¶¶ 77-78, 82.  The Court should reject this enhancement or otherwise vary from the resulting Guidelines range.  In short, this case calls for exercise of the Court's authority under *Booker* and *Kimbrough*, and for the Court to place the Guidelines in their rightful place, a sentencing consideration down the list in § 3553(a) and that is advisory only. *See also United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011) (holding that district court can depart from child pornography sentencing guidelines based on reasonable policy disagreement).

---

[13] See Sarah Perez, *Snapchat announces 750M monthly active users*, TECHCRUNCH+, Feb. 16, 2023, available at Snapchat announces 750M monthly active users | TechCrunch.

### 2.    Mr. McKenney's mental health, its impact on his offense conduct, and the reduced risk of recidivism support a departure from the Guidelines range pursuant to Section 5H1.3 or a variance.

> Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines.

U.S.S.G. § 5H1.3.  *Cf. United States v. Rausch*, 570 F. Supp. 2d 1295, 1305 (D. Colo. 2008)

("Title 18 Section 3553(a) provides evaluative criteria to restore balance between the order of society emphasized by the retributivist approach and the utilitarian view that every human being must be treated with respect for his or her individual circumstances. The stated criteria may clash, and not all apply in each case. The criteria also point to individuated considerations: No one size fits all. The object of this balancing process is to achieve not a perfect or a mechanical sentence, but a condign one—one that is decent, appropriate and deserved under all attendant circumstances.").  Accordingly, though Mr. McKenney's offense conduct is serious, the sentencing outcome is a weighing and, to some extent, balancing process, where mitigating considerations can meet or even exceed considerations pressing in favor of a longer prison term.

Mr. McKenney's engagement in the offense stems from a number of factors.

> Three primary factors have shaped Mr. McKenney's development and have also contributed to his current offenses:1) instability, poverty, and abuse throughout his childhood and adolescence; 2) untreated bipolar disorder; and 3) substance abuse disorder that began in adolescence.  Each factor alone can contribute to arrested development, but collectively these have resulted in Mr. McKenney's immaturity, impulsivity, and impaired judgment.

Report, Formulation and Conclusion.  The second and third factors can be managed so as to prevent recidivism, and the Court reasonably can expect that Mr. McKenney will age out of engaging in this conduct with minors.

16

Based on risk factors and research on sexual deviance, Mr. McKenney's
risk of recidivism arise from substance and alcohol use and untreated
mood disorder.  He does not have antisocial personality disorder or
evidence of psychopathy, two factors that are associated with a high risk
of recidivism. His sexual deviation reflected an attraction to adolescent
girls and not to prepubescent children and not to boys.  Research indicates
that attraction to prepubescent children and boys is associated with higher
rates of recidivism[14] than would be expected for Mr. McKenney after
treatment and maturing over time with age.  His risk is also lower since his
action was that of seduction/coercion and not violent.  Treatment and the
programming available in the BOP are valuable resources for supporting
Mr. McKenney's successful return to the community after incarceration.

Report, Risk of sexual deviance recidivism.

### 3. The Guidelines result does not adequately reflect Mr. McKenney's lack of criminal history or having served prison time.

An incarceration sentence near the Guidelines range would be disproportionate.  In

*United States v. Mishoe*, 241 F.3d 214, 220 (2d Cir. 2001), the Court of Appeals explained the

relationship between prior and current possible sentences.

Obviously, a major reason for imposing an especially long sentence
upon those who have committed prior offenses is to achieve a deterrent
effect that the prior punishments failed to achieve. That reason requires
an appropriate relationship between the sentence for the current offense
and the sentences . . . for the prior offenses.

While the *Mishoe* principally addressed the career offender Guidelines, the teaching of that

decision applies here. *See United States v. Casteneda*, 191 F. App'x 15, 18 (2d Cir. 2006)

(observing that *Mishoe* permits "a departure pursuant to § 4A1.3 . . . 'if the sentencing judge

determines, in the exercise of . . . discretion,' that the defendant's criminal history category

'overstates the seriousness of his criminal record.' (emphasis omitted) (quoting *Mishoe*, 241 F.3d

---

[14] Przybylski, Roger (2015)  **https://smart.ojp.gov/somapi/chapter-5-adult-sex-offender-recidivism** "While the rate at which child molesters are likely to sexually recidivate over the life course may be subject to further debate, current empirical evidence suggests that molesters of boys have higher short- and long-term recidivism rates than other types of sex offenders" Accessed: 10/10/2023.

at 215)).  Given that Mr. McKenney never served time previously, the Court can conclude that 13 years provides ample punishment, deterrence, and promotion of respect for the law.  There is no reason to believe that a longer period of incarceration would be more effective than a lesser sentence. *See*, *e.g.*, *United States v. Bun*, 3:13cr174(SRU), Judgment (ECF No. #72) (citing *Mishoe* and stating that "[t]he sentence imposed represents an incremental increase that should be sufficient to serve the purposes of sentencing."); *United States v. Keels*, 3:15cr17(JCH) (imposing below-Guidelines sentence based in part on the concept of incrementally proportionate sentencing).

**E.      The Requested Sentence Will Avoid Unwarranted Sentencing Disparities.**

Finding a case that presents with all of the same considerations is challenging, maybe even impossible, but there are points of comparison.  For example, in *United States v. Travis M. Williams*, 3:21-cr-173 (JAM), the defendant admitted to abusing and eight-year-old child over 100 times.  He recorded the abuse and distributed photographs to other adults. *See id.*, ECF No. 18, Gov't Sentencing Memo., filed Jan 17, 2022, at 1.  His guidelines range was expected to be 600 months.  *See id.*, Plea Agreement, ECF No. 8, at 6.  The Court imposed a total effective sentence of twenty-three years, or 276 months.  *See id.*, Judgment, ECF No. 23.

In *United States v. Jessica Pickering*, 3:21-cr-73 (SRU), Ms. Pickering reportedly joined a KiK group called "family fun c.p." where she was invited to discuss her interest in minors and share images of children.  *See id.*, Gov't Sentencing Memo., ECF No. 83, filed Dec. 27, 2021, at 1.  She engaged with an undercover agent and shared pictures of her molesting her two-year-old autistic nephew. *See id.*  The Guidelines advised an effective range of 240 months.  *See id.* at 6. The Court imposed a term of 96 months. *See* Judgment, ECF No. 93.

18

In *United States v. Heath Trahan*, 3:12-cr-47 (JBA), Mr. Trahan emailed an individual in New Jersey pornographic images that Mr. Trahan had taken of two minor children. *See id.*, Gov't Sentencing Memo., ECF No. 70, filed June 9, 2013, at 3. The victims were 7 and 4 years old. *Id.* One photograph included a child holding Mr. Trahan's exposed penis. *See id*. The guideline range was 292 to 365 months. *See id.* at 6. He was sentenced to 204 months. *See* Judgment, ECF No. 79.

None of these cases are the same as the one presented here, even though some similarities exist. Here, Snapchat was used to engage the victims, whereas the KiK application was used in *Pickering*. In other cases, the victims were younger. In other cases, the defendant shared the pornography; here, that is not at issue. In the end, the comparisons likely illustrates that there is no one answer and brings the analysis back to those points highlighted at the outset – the aggravation presented by the physical contact and number of victims, versus the lack of criminal history, the significant mental health considerations, and the restrictive impact of supervision.

## CONCLUSION

There is no escaping that the offense is serious. The statute says as much, requiring at least a 10-year prison term and a five-year term of supervised release to follow. With one case, Mr. McKenney has at least two decades of his life moved into the criminal justice system, particularly when a supervised release term longer than five years is anticipated. The inescapable consequences will not only punish Mr. McKenney, but also serve to deter, both Mr. McKenney and other potential offenders, protect the public, promote respect for the law, and recognize the seriousness of the offense. The need for rehabilitation is extraordinary.

In light of the foregoing, Mr. McKenney requests a sentence comprised of a 13-year prison term, no fine, a total $200 special assessment, and a term of supervised release deemed

necessary by the Court.  Mr. McKenney has not been informed of any request for restitution and therefore takes no position on that issue at this time.

Mr. McKenney recognizes that a prison term of 10 years likely is inadequate.  He requests 13 years in hopes that that term will enable him to be present for his son's high school graduation, assuming that he does not lose good conduct time while in the BOP.  Knowing that he will miss birthday after birthday, Christmas after Christmas, and so many milestones and events in his son's life, Mr. McKenney hopes that he can one day be present for him.

Respectfully Submitted,

THE DEFENDANT,
Justin McKenney

FEDERAL DEFENDER OFFICE

Date: November 23, 2023          /s/Charles F. Willson/s/_____
                                 Assistant Federal Defender
                                 10 Columbus Boulevard, 6th FL
                                 Hartford, CT 06107
                                 Phone: (860) 256-0313
                                 Bar No.: ct24129
                                 Email: charles_willson@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 23, 2023, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/Charles F. Willson/s/
Charles F. Willson