UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DOCKET 3:23cr00064(JAM) |
| v. | : | |
| JUSTIN MCKENNEY | : | NOVEMBER 30, 2023 |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

*"This man must have known just who to target.*
*And how to manipulate a child to bend to his will…."*

*--Victim Impact Statement from MV3's Mother (PSR at ¶ 42)*

This case is about Justin McKenney's targeted manipulation and predatory behavior with minor females. McKenney created a fictious Snapchat account to pose as a high school boy and interacted with numerous minors, including MV1, a 13-year-old, who he persuaded to sneak out of her home at night to meet for illegal sexual conduct on multiple occasions; MV2, a 14 year-old, who he paid to send him explicit images; and MV3, a 15-year-old, who he coerced and enticed into creating and sending child pornography images. In addition, McKenney also received child pornography from MV4 when she was 16 years old and who he recorded engaging in oral/genital contact with himself when MV4 was 17 years old.

As discussed more fully below, the Government respectfully submits that a below-guidelines sentence of 25 years' imprisonment is sufficient but not more than necessary to achieve the goals of sentencing.

## I.     Background of the Offense

The facts of the case are well documented in ¶¶ 5-39 of the PSR, to which there is no objection. A brief summary follows:

*Count One, Minor Victim 1*

In the late night hours on October 5, 2021, the parents of a thirteen-year-old female ("MV1") learned that MV1 had snuck out of her home. PSR at ¶ 8. They located her using the "findmyiphone" feature on MV1's phone. *Id.* MV1's brother texted MV1 to alert her that their mother was on her way to find her. *Id.* Upon receipt of that message, MV1 returned home. *Id.* MV1 initially claimed that McKenney was someone she knew from Snapchat as "J" or "Jason" and that they met for the first time on October 5th when he sexually assaulted her. *Id. at* ¶ 9. Soon thereafter, law enforcement reviewed MV1's phone and recovered text messages indicating that MV1 had been communicating with McKenney since at least mid-September and that MV1 believed McKenney was a 16-year-old student named George. *Id.* at ¶¶ 13-14. The texts also revealed that MV1 snuck out to meet McKenney on several occasions and that the first time was on September 17, 2021. *Id.* at ¶¶ 12-13.

McKenney's text messages make clear that he was singularly focused on encouraging MV1 to leave her house in the middle of the night to engage in sexual activity. For example, on September 21, 2021, McKenney asks if they are going to chill again and can they "pick up where we left off". *Id.* at ¶ 17. On Sept. 23, 2021: McKenney asked MV1 "whatcha doing" and they make plans to meet at 12:30 a.m. McKenney asks MV1 if she is "still on her period." *Id.* at ¶ 18. When MV1 responds that she is not, he says "Maybe if the tip will fit it can go in." *Id.* The next day, MV1 tells McKenney that she is "so sore" and "it like hurts so bad." *Id.* at ¶ 19. McKenney does not respond to this message for 3 days. *Id.* On September 27, 2021, he explains the silence by claiming his mother took away his phone because he was sleeping in his classes. *Id.*

On Sept. 28, 2021, McKenney asks MV1 "what time can you chill?" *Id.* at ¶ 20. The text messages confirm that they met at the elementary school at approximately 11:30 p.m. *Id..* On

October 4, 2021, MV1 and McKenney exchanged Snapchat messages about meeting. *Id.* at ¶ 21.

It does not appear that MVI and McKenney met that day, but during these messages, McKenney

continues to pretend to be a student. *Id.* For example, when MV1 asks, "why don't you have

school??", McKenney replies "I soo I'm just about to skip." *Id.*

On Oct. 5, 2021 (the day MV1's parents discovered that MV1 was not in her room),

MV1 and McKenney exchanged messages on Snapchat discussing meeting, and McKenney

requests MV1 to send him photographs. *Id.* at ¶ 22. The messages confirm that they met at

approximately 11:45 pm.  *Id.*  The next day, MV1 contacted McKenney on Snapchat and the

following occurred:

| 10/6/21 12:17 AM | MV1 | Lol my mom took my phone |
|---|---|---|
| 10/6/21 12:42 AM | MCKENNEY | Sry |
| 10/6/21 12:42 AM | MV1 | It's okay |
| 10/6/21 12:43 AM | MCKENNEY | U got in trouble |
| 10/6/21 12:43 AM | MV1 | She read through my messages and I literally just had to tell her everything but like she doesn't know who u r or that we did anything lol |
| 10/6/21 12:44 AM | MCKENNEY | What ya tell her lol |
| 10/6/21 12:44 AM | MV1 | She said she will give it back once I give her the password but like I don't believe her |
| 10/6/21 12:44 AM | MV1 | Idek I was so pissed off |
| 10/6/21 12:45 AM | MCKENNEY | I'm sry babe why'd u jump out |
| 10/6/21 12:45 AM | MV1 | BECAUSE SHE GOT MMY FUCKING LOCATION FROM MY BROTHER |
| 10/6/21 12:46 AM | MV1 | and she was like driving there |
| 10/6/21 12:48 AM | MCKENNEY | Shiiii |
| 10/6/21 12:48 AM | MCKENNEY | That was fuked of them to snitch |

| 10/6/21 12:16 PM | MCKENNEY | What's up u good |
|---|---|---|
| 10/6/21 12:54 PM | MV1 | she wants to go through my phone i got it for the day but she wants to go through it |
| 10/6/21 12:54 PM | MV1 | I'm going to just log out of snap and then I'll give her my phone |
| 10/6/21 12:54 PM | MV1 | so idk what to do |
| 10/6/21 12:54 PM | MV1 | i deleted all of my nudes |

**Count Two, Minor Victim Two**

The "close call" with MV1 did not deter McKenney.  Less than two weeks later, McKenney began communicating with a 14 year-old on Snapchat.  Between October 19, 2021 and February 18, 2022, McKenney used his "keepingupg" Snapchat account to exchange images and videos with MV2, including  (a) McKenney sending MV2 pictures of himself with his penis exposed and (b) MV2 sending McKenney sexually explicit images and videos of herself..

MV2 was 14 and living in Virginia at the time of her interactions with McKenney. McKenney told MV2 that he was 16.  Law enforcement was unable to recover the chats between MV2 and McKenney.  However, the Snapchat records included a brief exchange that took place on or about February 11, 2022 in which McKenney asked, "how I pay lol" and MV2 responded, "Cashapp."  MV2 also sent a snap of a pricing breakdown which read, "boob pics- $2, pussy pics-$5, pussy vids- $10, ass pics- $7, shaking ass- $10, stripping vids-$15."

**_Count Two, Minor Victim 3_**

Snapchat records revealed that in November 2021, the defendant used the "keepingupg" Snapchat account to encourage MV3 to create and send him child pornography. MV3 was 15 years old and living in Massachusetts when she created and exchanged nude images and masturbation videos with McKenney. During her forensic interview, MV3 identified herself in

images and confirmed that she told him her real age, and that McKenney did not share his age with her, but he (falsely) claimed he lived in Chicopee, Massachusetts.  MV3 stated that, at times, she  communicated with McKenney on Facetime where he displayed his penis.

### Count Four, Minor Victim 4

The defendant met Minor Victim 4 ("MV4") when she was 16 years old and working at the local Dunkin Donuts. The defendant was aware of her age and MV4 knew the defendant's true age.  Law enforcement recovered messages that McKenney exchanged messages with MV4 in which he offered to pay MV4 for nude images and sexual activity dating back to February 2021 (when MV4 was 16 years old).

From approximately December 2021 to February 2022, when MV4 was 17 years old, the defendant and MV4 exchanged nude images of themselves via Snapchat. During that same timeframe, the defendant used his Apple iPhone to produce four videos of MV4 performing oral-to-genital sexual intercourse on the defendant.

### McKenney's Arrest

On March 17, 2022, McKenney was arrested at his job in Massachusetts pursuant to a federal criminal complaint. He agreed to a post-arrest interview but essentially denied all conduct. In addition, he initially lied about the location of his car (for which there was a search warrant); his phone number; and his current residence. McKenney stated that he "does not usually use social media." He identified his Facebook, Snapchat, and Instagram accounts, but they were not the ones used to communicate with any of the Minor Victims. McKenney denied meeting a female in Glastonbury. Approximately 25 minutes into the interview, McKenney

advised the agents that they would find a small amount (less than one gram) of cocaine in his construction helmet.

### *McKenney's Phone and iPad*

In addition, to sexually explicit images of Minor Victims 2, 3 and 4, McKenney's electronic devices contained images of approximately eight other young females engaged in sexually explicit conduct (primarily lascivious exhibition of the genitals and masturbation) who have not yet been identified.  *Id.* at ¶¶ 35-36.  Further, the history on McKenney's iPad included McKenney's searches for websites for "teen hardcore" pornography  *Id.* at ¶ 35.

### *Summary of Offense Conduct*

Between September 2021 and his arrest in March 2022, the defendant repeatedly posed as a high school boy to connect with minor females.  His predatory behavior ran the spectrum from enticing a minor to meet for illegal sexual contact to soliciting minors to create sexually explicit images and videos for himself and recording himself engaged in sexual acts with a seventeen year old.   He showed no signs of stopping when law enforcement intervened.


## II.   **Procedural History**

On March 17, 2022, the defendant was arrested pursuant to a criminal complaint.  On April 11, 2023, McKenney waived indictment and pled guilty to a two-count information. The PSR sets forth the recommended Guideline Calculation of 360 months' to life imprisonment. PSR at ¶¶ 46-85. The guideline calculation in the PSR is consistent with parties' agreed guideline calculation .  *See* Plea Agreement at 7-8 (Docket No. 60).

In the plea agreement, the parties reserved their respective rights to request a non-Guideline sentence.  *Id.*  The defendant argues that the Court should impose a nonguideline

sentence because, *inter alia,* the adjustment for "use of a computer" is not a bona fide

aggravating factor in today's world; and the enhancement for a "pattern of conduct" is

duplicate.[1]

### *Use of a computer*

The Guideline Calculation in the PSR and in the plea agreement includes a two-level

adjustment for the specific offense characteristic of "use of a computer."  U.S.S.G. §

2G1.3(b)(3)(A) (Count One) and U.S.S.G. § 2G2.1(b)(6) (Count Two).  The Defendant argues

that the Court should vary from the applicable guidelines because the use of a computer no

longer a qualifies as an aggravating factor where nearly everyone has a computer.  Def.

Sentencing Mem. at 15.   In support of this argument, the defendant cites *United States v.*

*Dorvee,* a decision in which the Second Circuit expressed concerns about the Sentencing

Guidelines for non-production offenders in § 2G2.2.  *Dorvee,* 616 F.3d 174 (2d Cir. 2010).

As defendant notes, *Dorvee*  did not involve or address § 2G2.1 or § 2G1.3.  *See e.g.*

*United States v. Brown,* 843 F.3d 74, 92 (2d Cir. 2016) (distinguishing *Dorvee* and finding a 60

year sentence for three counts of production of pornography to be substantively reasonable).  The

Second Circuit has explained that its warning in *Dorvee* that a "straightforward application of the

sentencing Guidelines can lead to unreasonable sentences" arose in the "*limited context*" and

"*narrow circumstances*" present in that case, which involved, among other things, a defendant

who – unlike [the defendant] – "had no contact with children," even virtually. *United States v.*

*Muzio,* 966 F.3d 61, 64–65  (2d Cir. 2020) (emphasis added) (internal quotation marks omitted);

*see also United States v. Talada*, 828 F. App'x 52, 54 (2d Cir. 2020) (upholding 30-year

---

1 Although the Defendant's PSR letter and Memorandum occasionally refer to his challenges to the Guidelines as "objections", the Government understands that the Defendant agrees with that the Guidelines are properly calculated in the PSR and plea agreement but is requesting a variance or non-Guideline sentence.

sentence for receipt of child pornography for a defendant with multiple prior convictions and violations of supervised release related to child pornography and contact with minor); *United States v. Rafferty*, 529 F. App'x 10, 13 (2d Cir. 2013) (noting that concerns present in *Dorvee* were not present because "[defendant's] production of child pornography . . . is distinguishable from the conduct in *Dorvee*").

Moreover, *Dorvee* does not stand for the proposition that the Guidelines for child exploitation offenses should be disregarded.  *See United States v. Chow*, 441 Fed. App'x. 44 (2d Cir. 2011). Instead, it requires a court to give careful consideration to all pertinent sentencing factors and explain those reasons on the record.  *Id*. at 46.

Here, a review of the record supports application of the adjustment for "use of a computer".  While defendant is correct that computers are ubiquitous in today's society; McKenney's computer usage was instrumental to his commission of the offenses with the Minor Victims. McKenney used the computer to select and connect with his victims, to obscure his identity, to groom MV1 and to arrange locations to meet MV1 for illegal sexual activity, to solicit and receive child pornography directly from MV2, MV3 and MV4, to pay for purchases of child pornography with MV2 and to record himself engaged in sexual acts with MV4.

### *Pattern of Activity*

The Guideline Calculation in the PSR and the parties' plea agreement includes the multiple count adjustment and "pattern of activity" enhancement.  PSR at ¶¶ 77, 82.  The defendant requests this Court to vary from the resulting guideline range because the five-level enhancement for the pattern of activity is duplicative of the impact of the multiple count adjustment.  Def. Sentencing Mem. at 15.

The 10th Circuit recently rejected a similar argument. *United States v. Cifuentes-Lopez*, 40 F.4th 1215, 1220-21 (10th Cir. 2022). In *Cifuentes-Lopez* the court explained that the two level multiple count enhancement of §3D1.4 and the five level enhancement of §4B1.5(b)(1) serve different purposes:

> First, the Guidelines anticipate a cumulative application of both enhancements. U.S.S.G. § 4B1.5(b)(1) expressly states that if the provision applies, the resulting offense level "shall be 5 *plus* the offense level determined under Chapters Two and Three." *Id.* (emphasis added). The additive noun "plus" tells us that "the guidelines intend the cumulative application" of such enhancements. *United States v. Dowell*, 771 F.3d 162, 170 (4th Cir. 2014) (discussing a Chapter Two enhancement and § 4B1.5(b)(1)); *see also United States v. Von Loh*, 417 F.3d 710, 715 (7th Cir. 2005) (holding that the application of § 3D1.4 and § 4B1.5(b)(1) did not constitute impermissible double counting because "[t]he word 'plus' [in § 4B1.5(b)(1)] indicates that the [*1221] Sentencing Commission intended that the repeat sex offender enhancement be imposed in addition to calculations made pursuant to §§ 2A3.2 and 3D1.4.").
>
> Second, the two enhancements are directed to different purposes and aimed at different harms. The purpose of the multiple count enhancement in § 3D1.4 is to "provide incremental punishment for significant additional criminal conduct." *See* U.S.S.G. § 3D intro. cmt. The purpose of § 4B1.5(b)(1) is to protect minors from sex offenders "who present a continuing danger to the public." *See* U.S.S.G. § 4B1.5 cmt. bkgd. (noting that the enhancement is derived from a Congressional directive "to ensure lengthy incarceration for offenders who engage in a pattern of activity involving the sexual exploitation of minors"). Punishing an offender for additional criminal conduct and continued danger to the public is not double counting—those are two separate sentencing goals.

*Id.* at 1220-1221 (citing cases). The application of the § 3D.14 and § 4B1.5 is consistent with the Guidelines and is not a basis for a variance.

III.    **Discussion of the Sentencing Factors in 18 U.S.C. § 3353(a)**

Title 18, United States Code, Section 3553(a) sets forth the factors a sentencing court must consider when determining a sentence that is sufficient but not greater than necessary to achieve the purposes of sentencing. Those factors are discussed below:

### *Nature and Circumstances of the Offense*

The facts of the child exploitation case are a parent's nightmare.  McKenney, an adult male, used Snapchat to mask his identity, posing as a high school boy, to encourage, entice and coerce a 13-year-old to sneak out of her house in the middle of the night to meet him for illegal sexual activity on multiple occasions over several weeks.  In addition, he used this fictitious Snapchat identity to solicit and receive images and videos from MV2 and MV3. Finally, he solicited and received sexually explicit images from MV4, a minor who knew his true identity, and he later recorded himself engaged in sexual acts with MV4.

In the defendant's case, several factors make his conduct especially egregious. First and foremost, the MV1's life story is forever altered by the defendant's behavior.  MV1 believed she was in a relationship with a boy who cared about her.  She now knows that she was tricked and used by McKenney.  MV1 and her father plan to attend the sentencing to speak more about the impact McKenney's conduct has had on their family. The scope and nefariousness of the defendant's conduct in his enticement with a young girl militate in favor of a lengthy sentence.

Second, the number of victims is especially troubling.  In approximately six months, the defendant engaged in repeated sexual contact with a thirteen year old child who he was deceiving; he was producing child sex abuse material of himself engaging in oral sexual contact with MV4, and he was soliciting and receiving specific images of sexually explicit conduct from at least two minors through his Snapchat Account.

### *History and Characteristics of the Defendant*

There is no doubt that the defendant had a very difficult childhood, which is thoroughly described in the PSR and in defendant's memorandum in aid of sentencing. The Court should

consider the defendant's background in sentencing him, but nothing in his background explains why he decided to pose as a high school boy and prey on minor girls.

In an effort to explain the reason for his terrible crimes, McKenney submitted a psychological evaluation report prepared by a psychologist, Dr. Madelon Baranoski.  Dr. Baranoski wrote the report after reviewing the initial draft of the PSR and conducting an interview with McKenney during which she conducted tests focused on malingering, cognition, PTSD and personality. *See* Eval at 2, 7.  Dr. Baronski found that McKenney was not malingering, had an average Full Scale IQ, had elements of PTSD from abuse he suffered during his childhood  and did not have antisocial personality disorder or psychopathy. *Id* at 8-10.  Dr. Baranoski's view that McKenney's conduct reflected his "emotional and psychological regression" and "his failure to manage adult responsibilities contributed to his legal predicament." *Id.* at 11-12.   The question remains, however, exactly why did McKenney channel this regression into predatory and deceitful acts with minors.

### *The Need for the Sentence Imposed—to Reflect the Seriousness of the Offense, and to Provide Just Punishment for the Offense.*

The enticement of a minor to engage in illegal sexual activity and receipt of child pornography are serious offenses and requires a significant punishment. The damage he inflicted on the lives of his victims, their family, and his own family, is severe and enduring.  The seriousness of the offense is clear in the Victim Impact Statement provided by MV3's mother, detailing the trauma she has suffered since learning McKenney's true identity.

The fairness of a 25-year sentence in the instant case can also be assessed by reviewing it through the lens of a critic of the § 2G2.1 guidelines.  In *United States v. Muzio*, 966 F.3d 61, the Second Circuit affirmed as substantively reasonable a 420-month (35-year) sentence

imposed on a defendant who convinced underage victims to send him sexually explicit images and videos of themselves *but did not have any physical contact with a child*. Senior Judge Underhill, sitting by designation, dissented. In his dissent, Judge Underhill criticized the guidelines and urged jurists to consider ten factors:  six regarding the nature of the offense and four regarding the status of the victims. Along with stating the factors, Judge Underhill lays out what the "worst" conduct entails. Each of the factors and the application to McKenney's offense follow:

1.  Did the defendant engage in violence? The worst child pornography production cases involve the filming of child rape; forced or coerced sex acts are among the most serious offenses imaginable.

    •   **McKenney did not use violence.  He used coercion and trickery to convince MV1 to engage in illegal sexual acts and to convince MV2 and MV3 to send him child pornography.**

2.  What is the nature of the sexual contact involved? The conduct ranges from no actual contact to touching of genitalia to full penetration or oral sex. Repeated conduct (multiple times or multiple victims) is substantially more serious than a single episode.

    •   **McKenney engaged in sexual contact on multiple occasions with MV1 and MV4.**

3.  How was the pornography produced? Was the defendant filming his own interaction with the victim, filming another's interaction, passively recording through a hidden surveillance device, or soliciting victims' selfies? Did the defendant participate alone or with others?

    •   **McKenney filmed himself with MV4.  He solicited MV2, MV3 and MV4 to send him sexually explicit images.  He acted alone.**

4.  What was the extent of the distribution or use of the images? Was there a commercial exploitation? How wide was distribution on the internet? Were the images used as currency or to barter?

    •   **There is no evidence that McKenney distributed the images to others.**

5.  Did the defendant engage in deceit or trickery, including identity misrepresentation? Fraudulently inducing "voluntary" participation of the victim reflects serious wrongdoing.

    •   **McKenney's conduct involved trickery and deceit.**

6.   How many films or images did the defendant create? Production of a large volume of material reflects consciousness of wrongdoing.

   •   **McKenney had numerous images of MV2 and MV3 as well as videos of himself engaged in sexually explicit conduct with MV4.**

7.   How old was the victim or victims? The age of a victim can dramatically affect the crime's seriousness; in general, the younger the more serious, with crimes involving very young victims being especially horrific.

   •   **The Minor Victims ranged in age from 13 to 17**

8.   How many victims were there? The number of victims and the length of time over which the conduct occurred both can reflect seriousness.

   •   **There were four identified victims over the course of six months.**

9.   What relationship/responsibility did the defendant have vis-à-vis the victim? Was the defendant a parent, guardian, relative, babysitter, or person with authority over the victim?

   •   **McKenney did not have a relationship with his victims.**

10.   What was the intellectual capacity of the victim? Was the victim mentally disabled, drugged, or too young to resist/understand?

   •   **MV1 was too young to understand or resist McKenney.**

As the foregoing demonstrates, Judge Underhill's alternative analysis confirms the McKenney is a serious offender.  While not every factor is present, some of the most serious characteristics, including sexual contact with his victims, the use of deceit and the number of victims, support a lengthy sentence.

### *Specific and General Deterrence, and Respect for the Law*

McKenney poses a very serious danger to children as well as the rest of the community, as demonstrated by the facts in this case. There is no indication that McKenney would have stopped his actions on his own.

Interestingly, Dr. Baranoski did not conduct any recidivism testing. While it is not uncommon for a defendant charged with a serious sex offense to offer a psychological evaluation, it is concerning that one would be offered in which the evaluating psychologist failed

to administer any of the tests that are routinely administered to assess sex offender recidivism (for example, the Child Pornography Sex Offender Risk Tool (https://pubmed.ncbi.nlm.nih.gov/29592774/ ), the Static-99R (https://saarna.org/static-99/ ) and the Abel Assessment of Sexual Interest (https://abelscreening.com/products/evaluationtreatment-planning/aasi-3/ ). While each of these tests have limits to their reliability, the absence of *any* recidivism testing is unusual.

Despite the lack of recidivism testing, Dr. Baranoski opined that "McKenney's risk of recidivism arise from substance and alcohol use and untreated mood disorder." *Id.* at 13. Given McKenney's conduct while incarcerated, there is reason to be concern that McKenney will continue to be a danger. PSR at ¶ 4 (documenting McKenney's pretrial conduct including instigating an assault on another inmate[2], intoxication and possession of a white powdery substance that he claimed to be coffee creamer).

*First Step Act*

The defendant attempts to reassure the Court about his risk of reoffending by arguing that McKenney will spend at least a decade in prison. Def. Sentencing Mem. at 11. First, it is important to note that under the First Step Act, the defendant's conviction for Count One, enticement of a minor (unlike other child pornography offenses) does not render him ineligible to earn 50% credit on his sentence. As this Court is aware, the First Step Act increased the availability of time credits for offenders who complete a recidivism reduction program or who are determined to be at low risk of recidivism. *See* 18 U.S.C. 3632(d)(4). However, the

---

2 In his sentencing memorandum, defendant suggests that he is a target for retribution in the prison system. Def. Sentencing Mem. at 8. However, the records of his pretrial detention reveal he instigated an assault of a prisoner who he believed had reported him to the corrections officers for his manipulation of an inmate with autism.

legislation specifies that offenders convicted of certain offenses are ineligible to earn this increased time credit. 18 U.S.C. 3632(d)(4)(D). This list of offenses that are ineligible for increased good time includes most child sex offenses, including receipt of child pornography, sexual assault and failure to register as a sex offender. 18 U.S.C. 3632(d)(4)(D)(xxxvi)-(xliii). However, certain serious child sex offenses are (inexplicably) omitted from this list including enticement under 18 U.S.C. § 2422(b). Accordingly, McKenney cold be eligible for release much sooner.

*Age and Work History*

McKenney argues that he will be a lower risk of recidivism when he is released from prison.  However, there is reason to doubt the proposition that if McKenney is released in his 40s that he will be a reduced recidivism risk.  A review of the data for federal sentencings in child pornography offenses (which includes production, receipt, distribution, and possession), belies the notion that McKenney will "age out" of this type of offense. *See*

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2022/Table07.pdf (last visited November 30, 2023)(46.5% of the child pornography offenders were 41 years old or older).   While McKenney's education and work history are commendable, these are factors that were in place at the time he committed the offenses.  They provide little insight into McKenney's recidivism risk.

Furthermore, numerous studies have shown that the rate of reporting child exploitation crimes is very low, thus any recidivism rates based on records of arrest or conviction should be viewed as underestimates. *See e.g.* K. London, M. Bruck, S.J. Cedi and D.W. Schuman, *Disclosure of Child Sexual Abuse: What Does the Research Tell Us About the Ways that Children Tell?*, Journal of Psychology, Public Policy, and Law, Vol. 11, No. 1, p. 194 (2005) (reviewing numerous studies and concluding "[t]he evidence indicates that the majority of abused children do not reveal abuse

during childhood."). The Sentencing Commission acknowledged this in its report on the child

pornography guidelines, "[i]t is widely accepted among researchers that sex offenses against children

often go unreported and undetected," a fraction that "always should be considered in assessing the

results of a sex offender recidivism study based solely on reported arrests or convictions." U.S.

Sentencing Commission, *Report to Congress: Federal Child Pornography Offenses* (Dec. 2012), at

295.

Finally, General deterrence is an important factor because sex crimes against children are

significantly under-detected and under-reported. It is thus vitally important to deter those who

might commit such crimes by imposing significant sentences on those perpetrators who even

attempt to do so. *See e.g. United States v. Nania*, 724 F.3d 824, 842 (7th Cir. 2013) ("The senseless

acts of these criminals damage children for the rest of their lives. The government has

understandably devoted considerable resources to deterrence—and that distinct objective warrants

our attention. In that light, we find a 330-month consecutive [to a 103-year state sentence] sentence

reasonable punishment.").

### *Unwarranted Sentencing Disparities*

The Sentencing Guidelines were promulgated, in part, to minimize disparities in federal

sentences. Although those Guidelines are no longer mandatory, the importance of eliminating

sentencing disparities remains. 18 U.S.C. § 3553(a)(7).  A discussion of comparable cases is often

challenging because each case is unique and there are always distinguishing facts.

Defendant points to three cases in an effort to suggest that the guideline range would be

disparate.  First, reliance on *United States v. Jessica Pickering,* 3:21cr73(SRU) is misplaced.

Pickering involved the production of images depicting the lascivious exhibition of genitals and

sharing them on a Kik website. Importantly, prior to law enforcement involvement, Pickering

expressed remorse for her actions and left the Kik group on her own volition renouncing her conduct.

The other cases provide dramatically different facts.  In *United States v. Heath Trahan,* *3*:12cr00047(JBA) was unique insofar as the conduct involved two images (not videos)of child pornography.  Trahan produced one image of a 7-year-old minor engaged in sexual contact with the defendant, which he distributed, and the other depicted the lascivious display of genitalia of a 4-year-old child, which was not distributed.  *Id* at Docket No. 70.  The third case, *United States v. Williams*, 3:21cr173(JAM),  has little in common with the instant case.  In that case, the defendant abused an 8-year-old child more than 100 times and distributed some of the images of that abuse.  That Court imposed a 23 year sentence to run concurrent with a state sentence of 60 years.

Respectfully, the Government submits that the defendant's request for a 13-year sentence is insufficient for a multi-victim offense, including two with whom the defendant engaged in sexual acts. There are many cases in this district where hands-on offenders received much higher sentences.  See e.g., *United States v. McGuire*, 3:20CR153 (RNC) (30 years) (two victims); *United States v. Roberto Torres*, 3:21CR139 (JBA) (30 years) (one victim over several years); *United States v. Ronald Daniel*, 3:19CR166 (KAD) (27 years) (one victim) .

One potential comparable case is *United States v. Nathaniel Smith*, 3:16CR48 (MPS). Smith pled guilty to enticement of a minor after he travelled from Colorado to meet a 13-year-old child who he was communicating with online.  He enticed her to sneak outside of her home, travelled with her to a bus station, engaged in sexual acts over the course of a few hours before law enforcement recovered the minor.  The Court imposed a 146 month sentence.  *Smith* is distinct from McKenney in several respects including that (1) Smith suffered from a degenerative disorder that significantly shortened his life expectancy, (2) Smith's sexual abuse involved one 13-year-old victim *on one occasion* and (3) there was no evidence of the production of child pornography or the solicitation of images from other minors.

IV.    <u>**Victim Impact Statements**</u>

The Government expects that Minor Victim 1 and her family members will be present at the sentencing hearing and may ask to address the Court. The PSR contains a statement provided by the Mother of MV3. PSR at ¶ 42. The letter is remarkable in how it details the trauma MV3 has suffered since she learned McKenney's identity. Her description, at times, mirrors McKenney's own description of his childhood (depression, suicide attempts, medication and fear). *Id*.

V.    <u>**Restitution**</u>

At this time, the Government has not received any restitution requests. With permission from the Court, the Government requests up to 90 days to ensure that none of the victims have changed their mind regarding restitution. 18 U.S.C. § 3664(d)(5).

.

**Conclusion**

For the foregoing reasons, the Government submits that a below-guidelines sentence of 25-years would be sufficient but not greater than necessary to provide punishment, promote respect for the law, address the seriousness of the defendant's offense, protect the public from future crimes, and would accurately reflect all other sentencing factors, including the difficulties in the defendant's childhood.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

*/s/ Nancy V. Gifford*

NANCY V. GIFFORD

ASSISTANT UNITED STATES ATTORNEY
Federal Bar no. CT16324
450 Main Street, Room 328
Hartford, CT 06103
(860) 947-1101

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on November 30, 2023, a copy of the foregoing memorandum was filed electronically and served by first-class United States mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


*/s/ Nancy v. Gifford*
NANCY V. GIFFORD
ASSISTANT UNITED STATES ATTORNEY