UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| vs. | : CRIMINAL No. 3:23-cr-064 (JAM) |
| JUSTIN McKENNEY | : December 4, 2023 |

## **DEFENDANT'S REPLY MEMORANDUM**

Filed with this memorandum is a collection of letters from supporters of Mr. McKenney, including his parents, the mother of his son, and his sister. Those letters assist the Court in understanding Mr. McKenney's history and characteristics. They provide confidence that Mr. McKenney will not be alone when he is one day released, even though his family clearly recognizes the seriousness of his offense conduct. That dual recognition further evidences a reduced risk of recidivism – his family will watch him, knowing what he has done.

The letters also serve to illustrate Dr. Baranoski's points that address the Government's search for why Mr. McKenney committed the offense conduct. The nature of Mr. McKenney's mental illness and his resulting conduct is not the more simple situation where a person awakens with no money but needs to eat, so shoplifting is the most immediate answer unless the person goes to a local food bank; or a person with an addiction feels the pull of the addiction and so reaches out to a dealer and offers to make a few deliveries in exchange for free drugs.

Mr. McKenney's mental health challenges run deeper and reflect decades of struggle.

> The testing results indicated that Mr. McKenney meets criteria for Bipolar Disorder II which includes primarily depressive episodes with cycles into hypomanic states. That is, Bipolar II has less severe manic swings with more significant depressive cycles. Mr. McKenney has shown this pattern since childhood, with depression and suicidal ideas and attempts that began in elementary school and continued.

Evaluation Report, PSYCHOLOGICAL ASSESSMENT, Test Results, On personality testing.

The treatment he received as a child was inconsistent over time, and he did not engage in

1

meaningful treatment as an adult. *See id*., FORMULATION AND CONCLUSION ("He was diagnosed with depression, anxiety, and bipolar disorder, yet his treatment was irregular and incomplete. His mother's frequent moves and his changes in school contributed to his getting lost in the system.").

Mr. McKenney's resulting conduct is a product of that condition and other factors.

> <u>Three primary factors</u> have shaped Mr. McKenney's development and <u>have also contributed to his current offenses</u>:1) instability, poverty, and abuse throughout his childhood and adolescence; 2) untreated bipolar disorder; and 3) substance abuse disorder that began in adolescence. <u>Each factor alone can contribute to arrested development, but collectively these have resulted in Mr. McKenney's immaturity, impulsivity, and impaired judgment</u>.

*Id.*  Mr. McKenney's mental health, drug use, and historic instability led him down that path.  Mired in regression and resulting regressive behaviors, he did not have other pro-social skills and support networks (particularly, ongoing treatment and suitable medication) to derail him from engaging in destructive behaviors.

> His social interactions, judgment, and impulsivity reflect adolescent thinking.  He lacks the perseverance, sensitivity, self-confidence, experience, and communication skills (based on his verbal ability) to sustain adult relationships. <u>During a period of loss and mood upheaval, he engaged with social and emotional peers -- teen age girls, including one who was in early adolescence.  In my opinion his solicitation of adolescent girls reflected his emotional and psychological regression.</u>
>
> <u>Mr. McKenney's sexual offenses indicate his marginal adult adjustment and need for treatment.  His history and arrested development are evident in his immaturity, failure to manage adult responsibilities, and contributed to his legal predicament.</u>

Evaluation Report, Formulation and Conclusion & Context of his offense, (emphasis added). While there is no one moment of stealing bread or making drug deliveries, the line from untreated mental health needs – including a depression cycle that historically would swing into episodes of hypomania – is evident.

The Government's urging that the Court not apply a variance for Mr. McKenney's use of a computer also is flawed. There are a number of aggravators present that warrant prison time and more than the statutory minimum – the number of victims, in-person contact, Mr. McKenney's dishonesty in communicating with the victims stand out. The use of a smartphone, however, is so common and unexceptional in today's world that any conceivable support for the enhancement originally in its adoption by the Guidelines, -- *e.g.*, that a defendant would go so far as to make use of a computer to commit the offense -- no longer is supportable.

In 2023, if that enhancement is employed or not viewed as supporting a variance, seemingly every case would involve that enhancement,[1] akin to requiring an enhancement if either a defendant or victim had to use a car to appear at a meeting. Back when cars were first on the road, that approach and the goal of deterring the use of cars for wrong ends might make sense; not so today. The adoption of computers and the smartphone are similar, but the rate of

---

[1] The Court of Appeals has recognized this issue for more than a decade.
> . . . the child pornography Guidelines provide for a series of enhancements that apply in virtually every case, resulting in Guideline ranges that usually are near or above the statutory maximum, "even in run-of-the-mill cases." 604 F.3d at 96. For instance, three of the five enhancements that applied to Tutty here also apply to the overwhelming majority of offenders: 94.8% of offenders received an enhancement for images of victims under the age of twelve; 97.2% of offenders received an enhancement for use of a computer; and 96.6% of offenders received an enhancement based on the number of images possessed. *See* United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2009, available at* http://www.ussc.gov/gl_freq/09_glinexgline.pdf (last visited Jul. 6, 2010). The computer enhancement, for instance, has the flavor of impermissible "double counting"—because it effectively "increase[s] a defendant's sentence to reflect the kind of harm that has already been fully accounted for" by the base offense level or other enhancements. *United States v. Volpe,* 224 F.3d 72, 76 (2d Cir.2000) (citation omitted).

*United States v. Tutty*, 612 F.3d 128, 132 (2d Cir. 2010).

integration into society has been at a frenetic pace, making this enhancement an inaccurate and overly-inclusive adjustment to considering an individual's culpability and need for punishment.

In the end, these circumstances warrant a sentence significantly below the Guidelines.[2] While *Crosby* compels the Court to make the requisite calculations, the role of the Guidelines has moved from center stage, especially in cases where the Guidelines only serve to push the advice to the statutory maximums.[3] The Guidelines rush to 360 and higher only serve to render their advice unhelpful and contrary to the Court's duty to impose a sentence that is sufficient but not greater than necessary. The Government's request for 25 years admittedly is below the Guidelines, but that request does not equate with the parsimony clause's greater guidance.

---

[2] The Government points to three cases that are factually distinguishable upon closer review. See Gov't Br. at 17 ("There are many cases in this district where hands-on offenders received much higher sentences. See e.g., *United States v. McGuire*, 3:20CR153 (RNC) (30 years) (two victims); *United States v. Roberto Torres*, 3:21CR139 (JBA) (30 years) (one victim over several years); *United States v. Ronald Daniel*, 3:19CR166 (KAD) (27 years) (one victim)"). Each case involves conduct far more egregious than the conduct presented here, particularly in considering the ages of the victim, the duration of the conduct, and the defendant having responsibility to care for the victims.

As noted by the Government, in *Torres*, the defendant assaulted one victim over several years, a far longer span than present here. In *McGuire*, according to the Government's memorandum in that case, see ECF No. 57 at 1-5, sexual abuse by McGuire of one child in his care and control began when the victim was 6 years old and continued for over a year, and he also sexually assaulted another same-aged child on one occasion. In *Daniel*, the defendant assaulted a girlfriend's granddaughter who was 8 years old and threatened her with violence if she reported the abuse; he later shared images online so as to access a chat group, and he had somewhat recently discharged from a decades-long sentence for a murder he had committed as a young man.

[3] *See*, *e.g.*, *Tutty*, 612 F.3d at 131 ("The district court committed procedural error when it concluded that it could not consider a broad, policy-based challenge to the child pornography Guidelines. Instead, the district court essentially held that it could deviate from the sentencing range called for by U.S.S.G. § 2G2.2 only if Tutty had demonstrated unique personal factors that would distinguish him from other defendants who had committed the same crime."). *Cf. United States v. Chow*, 441 Fed. Appx. 44, 46 (2d Cir. 2011) (affirming where "record refutes Chow's argument that the district court failed to give "thoughtful consideration [to] the serious judicial objections that have been articulated by this and other courts" to mechanical Guidelines sentences in child pornography cases").

Respectfully Submitted,

THE DEFENDANT,
Justin McKenney

FEDERAL DEFENDER OFFICE

Date: December 04, 2023

/s/Charles F. Willson/s/
Assistant Federal Defender
10 Columbus Boulevard, 6th FL
Hartford, CT 06107
Phone: (860) 256-0313
Bar No.: ct24129
Email: charles_willson@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 04, 2023, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/Charles F. Willson/s/
Charles F. Willson